[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12931
Non-Argument Calendar
_____

D.C. Docket No. 9:18-cv-80569-JIC

BRIAN P. FFRENCH,

Plaintiff-Appellant,

versus

EILEEN T. FFRENCH,
Individually, and as Successor Trustee of the purported
2015 Restatement of the Robert N. Ffrench Revocable Trust,
CARL ANTHONY CASCIO,
MICHAEL S. FFRENCH,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 6, 2019)

Before MARCUS, ROSENBAUM and BLACK, Circuit Judges.

PER CURIAM:

Brian Ffrench appeals the dismissal of his complaint on the ground that diversity jurisdiction was collusively created in violation of 28 U.S.C. § 1359. Brian asserts the district court erred in dismissing his complaint under § 1359 because the assignment of Robert J. Ffrench's claims to Brian did not affect diversity jurisdiction. After review,[1] we affirm.

## I. BACKGROUND

The facts relevant to the diversity jurisdiction question are these. On May 2, 2018, Brian filed a complaint against Defendants Eileen T. Ffrench, Carl A. Cascio, and Michael S. Ffrench. The complaint sought rescission of a 2016 trust amendment directed by the Ffrenches' father on grounds of undue influence and lack of capacity, and also asserted claims for tortious interference and breach of contract. Defendants each moved to dismiss, asserting the court lacked subject-matter jurisdiction over the dispute. Specifically, they asserted that Robert, brother of Brian, Eileen, and Michael, collusively assigned to Brian his personal interest in the causes of actions raised in the complaint. Robert (a potential plaintiff) and

---

[1] We review *de novo* the district court's conclusion that it lacked subject matter jurisdiction but review its factual findings for clear error. *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011). Under the clear error standard, "[w]e must affirm the district court's determination so long as it is plausible in light of the record viewed in its entirety." *Id.* (citations omitted). "The question of whether a device is so lacking in substance as to be improper and collusive under Section 1359 is a question of fact." *Bass v. Texas Power & Light Co.*, 432 F.2d 766-67 (5th Cir. 1970).

Michael (a defendant) are both citizens of Texas.  So, had Robert not assigned his claims to Brian and instead participated in the case, complete diversity would be absent and diversity jurisdiction would be lacking.   The district court agreed that jurisdiction was collusively obtained, and dismissed for lack of jurisdiction.

## II.  DISCUSSION

The district courts have original jurisdiction of all civil actions where the amount in controversy exceeds $75,000 and where the plaintiffs are diverse in citizenship from the defendants.  28 U.S.C. § 1332.  Diversity of citizenship is determined at the time of filing the complaint.  *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1306 (11th Cir. 2016).  However, a district court lacks jurisdiction of a civil action "in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359.

An assignment may be collusive, in violation of § 1359, when the assignor retains an interest in the assigned claims, the assignee has no previous connection in the matter, and the assignment is made for the sole purpose of accessing the federal courts.  *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 827-28 (1969); *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1315 (11th Cir. 2007).  However, where a claimant makes a bona fide, absolute transfer of his claims for the purpose of invoking federal jurisdiction, federal jurisdiction will be

proper "so long as the succession and transfer were actual, not feigned or merely colorable." *Ambrosia Coal*, 482 F.3d at 1315 (quotations omitted). In evaluating the nature and validity of absolute transfers, we consider the sufficiency of the consideration exchanged for the assignment. *Id.* at 1315-16.

In *Gilbert v. Wills*, 834 F.2d 935, 936-37 (11th Cir. 1987), we considered the application of 28 U.S.C. § 1359 in a case alleging a violation of Georgia's wrongful death statute. The applicable wrongful death statute provided the surviving husband and children of a deceased wife and mother would have a joint cause of action for her wrongful death. *Id.* at 936. If less than all brought suit, the litigating survivor or survivors were authorized to serve process upon the other members of the family who were then given the right to intervene at any time before final judgment, and those who were served but elected not to intervene thereby waived any right to participate in any recovery. *Id.* The father, a resident of Florida, brought the lawsuit in federal court against defendants, all residents of Georgia, based on diversity of citizenship. None of the Gilbert children, all residents of Georgia, elected to intervene. *Id.* However, all surviving members of the family—the father and the children—had a private agreement to share the recovery notwithstanding. *Id.* We held that "the surviving members of the Gilbert family through their private agreement working in coalescence with the provisions

of the Georgia wrongful death statute, manipulated the result in such a way as to manufacture diversity jurisdiction." *Id.* at 937.

The district court did not clearly err in finding that Robert's assignment of his claims to Brian was collusive in violation of § 1359.  Brian argues that 28 U.S.C. § 1359 is inapplicable because Robert's assignment does not create diversity jurisdiction as no party was "made or joined" by Robert's assignment in order "to invoke the jurisdiction of the district court."  Specifically, Brian states he is a "proper party plaintiff in his own right."  However, Brian's argument construes § 1359 too narrowly.  In fact, in *Gilbert* the father was a "proper party plaintiff in his own right," and diversity was created when the children who would have also been proper party plaintiffs chose not to intervene, thereby ensuring diversity between plaintiff and defendants.  *Gilbert*, 834 F.2d at 937.  Here, Robert's assignment of his claims to Brian also ensured diversity between plaintiff and defendants.

The district court did not clearly err in finding Robert retained an interest in the litigation.  The assignment states Robert assigned "all of his ownership, right, title and interest in any and all claims, demands, causes of action of any kind whatsoever," but in his affidavit, Robert stated only that he "assigned [his] damage claims."  This distinction is important because Counts One and Two requested equitable relief in the form of rescission of the 2016 trust amendment, separate

5

from Brian's damages claims. Regardless, Robert maintained his interest as a beneficiary of the trust under the 2011 amendment, which Brian contended would be the operating amendment if he were to succeed on his rescission claims. Thus, at the least, Robert retained an interest in the outcome of Brian's claims, because under the 2016 amendment, Robert is not a beneficiary of the trust, but under the 2011 amendment, he is entitled to 25 percent of the residuary trust estate. Brian argues Robert has absolutely assigned his interests because Robert would regain his interest in the trust as a matter of law regardless of his assignment; however, the fact that, as a matter of law, Robert's inheritance will necessarily be impacted by the result of Brian's claims gives more credence to the district court's finding that, based on the totality of the circumstances, Robert's assignment was done collusively.

Additionally, because Brian could have asserted the rescission claims in his own right, effectively protecting Robert's interest in his inheritance without Robert's assignment or involvement in the case, it appears the only function of the assignment was to allow Robert to effectively assert his damages claims while still maintaining diversity among the parties. *See Kramer*, 394 U.S. at 827-28. While Brian contends Robert executed the assignment out of a desire to avoid family litigation "so far from where [he] lives and works," this explanation alone is not conclusive, because Brian also alleged Robert participated in the several Florida

6

state court proceedings that preceded this action, some of which did not directly concern their father's wellbeing.

Moreover, there is no evidence as to what consideration Robert received in exchange for his assignment; the assignment itself summarily states it was given in consideration of Brian's acceptance and "for other good and valuable consideration." *See Ambrosia Coal*, 482 F.3d at 1315-16. Lastly, the fact Robert's assignment was executed the day before Brian's complaint was filed in the district court raises the concern the assignment was done to avoid destroying diversity, as diversity is measured at the time of filing the complaint. *See PTA-FLA,* 844 F.3d at 1306; *see also Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 863 (2d Cir. 1995) (considering the timing of an assignment in determining whether it was collusive); *Westinghouse Credit Corp. v. Shelton*, 645 F.2d 869, 871 (10th Cir. 1981) (same).

## III.  CONCLUSION

Although an assignment may be executed to invoke diversity jurisdiction if it is done absolutely, a review for clear error leads to the conclusion Robert's assignment to Brian was "merely colorable." *Ambrosia Coal*, 482 F.3d at 1315. The record suggests Robert's assignment was done to maintain diversity of citizenship, while still allowing him to pursue his claims and protect his interest in the trust assets under the guise of an absolute assignment, an arrangement

proscribed by § 1359.  *See*  28 U.S.C. § 1359.  Accordingly, the district court did

not err in dismissing Brian's complaint on this basis.[2]

   **AFFIRMED.**

_____

   [2] For the first time on appeal, Brian asserts the district court abused its discretion in failing to hold an evidentiary hearing on the diversity issue.  When a motion to dismiss turns on an issue of credibility, it may be proper for the district court to hold an evidentiary hearing. *Sunseri v. Macro Cellular Partners*, 412 F.3d 1247, 1249-50 (11th Cir. 2005).  However, we will "turn a deaf ear to protests that an evidentiary hearing should have been convened but was not, where … the protestor did not seasonably request such a hearing in the lower court." *Id.* (quotations omitted).  The district court did not abuse its discretion by not granting Brian a hearing on the jurisdiction issue because he never requested one. *See id.* (reviewing a district court's decision to rule on a motion to dismiss without an evidentiary hearing for abuse of discretion).